IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| **RICKY W. BRUNER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **6:06-cv-4822-UWC** |
| **ALABAMA POWER COMPANY,** | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this case, Plaintiff, Ricky W. Bruner claims that he was terminated by Defendant Alabama Power Company ("APCO") in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*. After completion of discovery, Defendant has moved for summary judgment. (Doc. 23.)

Based on the undisputed facts, the Court finds and concludes that APCO is entitled to judgment as a matter of law.

I. The Undisputed Facts

Plaintiff was employed by APCO in 1978.

On October 27, 2000, Plaintiff was involved in a non-work related automobile

accident. His back was broken in two places; and he sustained rib fractures, shoulder injuries, and a closed head trauma. He took a leave of absence following the accident and returned for a few days in March 2001. Plaintiff then took a two year leave of absence due to his back problems. During this time, he was diagnosed with prostate cancer and had surgery. In the fall of 2003, Plaintiff returned to work on restricted duty. However, he was unable to perform his previous job because of work restrictions relating to his back. Specifically, he was unable to work twelve hour shifts and work overtime.

By February 2004, APCO had created a new training position for Plaintiff. Although he apparently struggled with the position during his first year, he ultimately began performing satisfactorily.

APCO has a strict electronic communications policy that prohibits employees from sending "objectionable" e-mails, forwarding chain letters or hoaxes, as well as engaging in any other "re-mailing" activities. (Doc. 25, Def's Ex. 2, Bruner Dep. at Ex. 16, p.13.) The e-mail policy, otherwise referred to as the "E-policy," defines "objectionable" as

> anything that . . . could reasonably be considered obscene, threatening, hostile, indecent, harassing, or offensive. This includes, but is not limited to written, verbal, or graphic material, that would offend, harass, or threaten a reasonable person on the basis of race, color national origin, ethnicity, religion, age, gender, veteran's status, sexual orientation,

physical or mental impairments, or political beliefs.

(Def's Ex. 2, Bruner Dep. at Ex. 16, p.12.)  Any employee who violates the policy faces disciplinary action, up to and including termination.  (Def's Ex. 2, Bruner Dep. at Ex. 16, p.15.)

Plaintiff indubitably received and understood the e-mail policy.

On August 4, 2005, Plaintiff forwarded an e-mail to co-worker Cherie Warden Hill entitled "FW: A**holes,"containing a story involving repeated use of the word "asshole."  (Def's Ex. 2, Bruner Dep. at Ex. 18, p. 45-47; Burner Dep. at 249.)  When Hill attempted to forward the e-mail to another employee, she accidentally forwarded it to all the employees at her plant.  APCO investigated the matter and discovered that Plaintiff had sent the e-mail to Hill.

APCO also discovered that Plaintiff had sent numerous e-mails that violated the E-policy, including chain e-mails, an e-mail that contained the underside of a women's breast, e-mails sent outside the company and e-mails containing sexual innuendo, as well as e-mails containing what the company considered offensive content/terminology.[1]  (*See* Def's Ex. 2, Bruner Dep. at Ex. 18.)

---

[1] One e-mail, entitled "Redneck Scrapbook," contained a photo of a naked man on a toilet. (Def's Ex. 2, Bruner Dep. at Ex. 18, p. 18.)  Another e-mail contained a picture of a woman's breast being put through a washboard and another, entitled "fishing license," compared "catching" a woman to catching fish and indicated that women go "bad" if you bring them home. (Def's Ex. 2, Bruner Dep. at Ex. 18, p.21, 41-42.)

A committee of APCO employees subsequently recommended terminating Plaintiff. Jeff Peoples, Plaintiff's supervisor, agreed with the committee's recommendation.

However, APCO gave Plaintiff the option of resigning or being terminated. Plaintiff elected to resign.

At some point, the investigation committee also reviewed Hill's e-mails. In addition to the e-mail Hill received from Plaintiff, the committee found that she had received only three other chain e-mails. Hill was disciplined at the second level.[2]

The committee then considered the appropriate level of discipline for three other employees who had violated the E-policy: Wayne Jones, Barbara Mosley, and Marguerite Rome. The committee recommended third level discipline for all three. Ultimately, supervisor Peoples, gave Jones a first level discipline because he had sent only three e-mails and only one was very offensive. Peeples decided to give Rome third level discipline because of the large volume of e-mail,s whose content was less offensive than those of Plaintiff. Finally, Peeples terminated Mosley because she had sent a high volume of prohibited e-mails, including one that was considered potentially offensive.

---

[2] Alabama Power's Non-Punitive Discipline Policy provides for three levels of discipline before discharge to address employee misconduct.

II. The Substantive Law

Proof of employment discrimination is regulated by the well-established *McDonnell Douglas*[3] formula: 1) a plaintiff must prove a *prima facie* case of discrimination; and, if so, 2) the defendant then must articulate a legitimate, non-discriminatory reason for the challenged decision; and upon such articulation, 3) the plaintiff must finally prove that the articulated reason is only a pretext for the forbidden discrimination.

To prove a *prima facie* case of disability discrimination under the ADA, a plaintiff must establish: 1) that he has a disability, 2) that he is a qualified individual, and 3) that he was discriminated against because of his disability. *See Cleveland v. Home Shopping Network, Inc.,* 369 F.3d 1189, 1193 (11th Cir.2004).

To establish a disparate treatment claim under the third prong of the *prima facie* case, a plaintiff must show that: (1) he is a member of a protected group; (2) that he was subjected to an adverse employment decision; and (3) that the employer treated similarly situated employees outside the protected group more favorably. *Cooper v. Southern Co.*, 390 F.3d 695, 716 n.9 (11th Cir. 2004).

> "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and

---

[3]*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

are disciplined in different ways." *Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311 (11th Cir.), *opinion modified by* 151 F.3d 1321 (1998) (quoting *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997)). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Id*. (internal quotations and citations omitted). We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges. *See Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir. 1989) ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples.").

*Maniccia v. Brown*, 171 F.3d 1364, 1368-9 (11th Cir. 1999).

### III. Analysis

#### A. Bruner Was Disabled for Purposes of the ADA.

Alabama Power first argues that Plaintiff is not disabled.

The argument falls under its own weight.  For even though Plaintiff is currently able to work, it is undisputed that he did not work for two years during which he suffered from severe back problems and cancer.  Therefore, he was substantially limited in his ability to work, had a history of being disabled, and arguably was perceived as being disabled.  *See* 29 U.S.C. § 709(20)(b).

#### B. Plaintiff Has Proffered No Evidence That Similarly-Situated Employees Were Treated Differently

Without elaboration, Plaintiff contends in his reply brief that the three employees who were disciplined, but not terminated, were similarly situated because

they all sent e-mails that violated company policy.  Additionally, he mentions several employees whom he <u>believes</u> violated the e-mail policy, but were not disciplined: Stephen Hudson, Paul Preston, Marin Reese, Jackie Shanklin, John Hughley and Harriet McQueen.  (*See* Pl.'s Ex. F ¶¶ 4-5.)

Plaintiff's reliance on the conduct of these other employees is unsupported for two reasons.  First, with respect to the employees he <u>believes</u> violated the policy and were not terminated, he relies solely upon his affidavit testimony.  Such "evidence" cannot carry the day.  While all <u>reasonable</u> inferences should be made in favor of the nonmovant, any "inferences based upon speculation and conjecture [are] not reasonable." *Blackston v. Shook and Fletcher Insulation Co.*., 764 1480, 1482 (11th Cir. 1985)

Second, Plaintiff's reliance on the conduct of both the disciplined and non-disciplined employees is misplaced  because there is no evidence that the "quantity and quality of the comparator's conduct" was "nearly identical" to the conduct for which he was terminated.  *See Maniccia*, 171 F.3d at 1369.  The comparators who were not terminated and/or not disciplined sent fewer and/or less objectionable e-mails.

Thus, Plaintiff has failed to establish a prima facie case of discrimination.[4]

## Conclusion

By separate order, summary judgment shall be entered for the Defendant and against the Plaintiff.

DONE this 30th day of June, 2008.

_____
U.W. Clemon
United States District Judge

---

[4] Because Plaintiff failed to prove the third element of his *prima facie* case, it is unnecessary to reach the other *McDonnell Douglas* requirements. Even so, it is indubitably clear that APCO has articulated a legitimate, non-discriminatory reason for its decision to discharge the Plaintiff; and that the Plaintiff has failed to prove that the articulated reason was a pretext for disability discrimination.

The Court is not unmindful of Plaintiff's strongly-held view that his e-mail transgressions did not warrant termination. But it is not the role of the Court to "sit as a super-personnel department that re-examines" the defendant's employment decisions to the extent those decisions were reasonable. *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Where, as here, a reasonable employer might have elected to make a hard-nosed decision and there is no evidence of "implausibilities, inconsistencies, [or] incoherencies . . . in the employer's proffered legitimate reasons for its action," the Court is bound by the decision even though it might have reached a different one. *See McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008) (citations omitted).